UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JULIA VALLER INC d/b/a JULIA VALLER EVENT STAFFING,

Case No.: 1:26-cv-

Plaintiff,

**COMPLAINT**

-against-

KSENIYA SHEK a/k/a XENIA SHEK a/k/a SENA
SHEK, XS LLC, and XS EVENT STAFFING LLC
d/b/a XS LLC,

Defendants.

-----------------------------------------------------------------X

Plaintiff, JULIA VALLER INC (hereinafter, the "Plaintiff"), through their counsel, Sage

Legal, LLC, files this Complaint against Defendants, Kseniya Shek a/k/a Xenia Shek a/k/a Sena

Shek (hereinafter "Shek" or the "Individual Defendant"), XS LLC (hereinafter "XS"), and XS

Event Staffing LLC d/b/a XS LLC (hereinafter "XSES") (XS and XSES collectively hereinafter

the "Corporate Defendants") (the Individual Defendant and the Corporate Defendants collectively

hereinafter the "Defendants"), and state upon information and belief:

## NATURE OF THE CASE

1.      This is an action for damages & injunctive relief related to Defendants' improper

misappropriation of Plaintiff's confidential information and trade secrets *during and after her*

*engagement with Plaintiff* resulting in her violation of or engagement in: (i) the Defend Trade

Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); (ii) misappropriation of trade secrets; (iii) unfair

competition; (iv) tortious interference with contractual relations, business relations, and

prospective economic advantage; (v) unjust enrichment; (vi) breach of contract; (vii) conversion;

(viii) civil conspiracy; and (ix) breach of implied covenant of good faith and fair dealing.

2.      Defendants' diabolical scheme to leech off of Plaintiff's business, causing Plaintiff irreparable harm, must be stopped.

3.      Specifically, Defendants must be prevented from utilizing Plaintiff's confidential information and trade secrets stolen by the Defendants.

4.      In addition to being enjoined from her conduct which has irreparably harmed Plaintiff in its business, Defendants must pay for damages for the harm she has caused to Plaintiff's business.

## THE PARTIES

5.      Plaintiff is a corporation, organized and existing under the laws of New York, with its principal place of business at 142 West 57th Street, Suite 901, New York, NY 10019.

6.      Upon information and belief, Shek is an individual residing at 12020 Southern Highlands Parkway, Condo 1001, Las Vegas, NV 89141.

7.      Upon information and belief, XS is a domestic limited-liability company, formed and existing under the laws of Nevada, with its principal place of business at 12020 Southern Highlands Parkway, Condo 1001, Las Vegas, NV 89141.

8.      Upon information and belief, XSES is a domestic limited-liability company, formed and existing under the laws of Nevada, with its principal place of business at 915 Alper Center Dr., 6206, Henderson, NV, 89052.

9.      XS was formed in July 2024, four months prior to her separation from employment with Plaintiff, and was purportedly shut down following a December 2024 cease-and-desist letter sent by the Plaintiff to Shek concerning violations of the restrictive covenant agreement she signed in relation to her employment with the Plaintiff.

10.     Despite the foregoing, XSES was formed in September 2025, and is a mere continuation of XS.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367 based on the federal claim raised under the DTSA, which is a federal law.

12.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims against Defendants because they are part of the same case or controversy and arise under a common nucleus of operative facts.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

14.     The trade secrets at issue relate to Plaintiff's products and/or services that are used in, intended for use in, and substantially affect interstate commerce.

## FACTS

15.     Plaintiff was founded by Julia Valler, its principal, in 2013 and after years of dedicated work, investment of time, financial resources, and marketing efforts, Plaintiff has achieved great success and expanded to eight (8) major urban markets in: (i) New York, NY; (ii) Miami, FL; (iii) Los Angeles, CA; (iv) San Francisco, CA; (v) San Diego, CA; (vi) Las Vegas, NV; (vii) Houston, TX; and (viii) Chicago, IL.

16.     Since its incorporation, Plaintiff has invested in, developed, created, and launched their business, which is exclusively dedicated to providing event staffing services, including waitstaff, bartenders, and promotional staff for events including private events, corporate events and promotional events, across the foregoing eight (8) major urban markets.

17.     Plaintiff employed Shek and taught her everything she knows about the event staffing business.

18.     As part of Shek's employment with Plaintiff, Shek agreed to certain restrictive covenants; namely, that she agreed not to compete with Plaintiff for a period of two (2) years.

19.     On September 13, 2024, Shek separated from employment with Plaintiff.

20.     As a result, Shek was required not to compete with Plaintiff for a period of two (2) years, until September 13, 2026.

21.     However, in violation of the restrictive covenant agreement she signed, Shek formed XS in July 2024, *while she was still employed by Plaintiff*, as part of her plan to steal Plaintiff's business and compete against Plaintiff in violation of the DTSA and related state laws, as well as in breach of her restrictive covenant agreement.

22.     Upon information and belief, Shek retained, misappropriated, and utilized Plaintiff's confidential data to form her competing business while she was still employed by Plaintiff.

23.     Indeed, Defendant offers event staffing services including waitstaff, bartenders, and promotional staff for the same types of events including private events, corporate events and promotional events, and does so in Los Angeles and Las Vegas, which are both cities that Plaintiff provides these services in.

24.     In early December 2024, upon learning that XS was unlawfully competing with Plaintiff in breach of its agreement, Plaintiff sent Shek a cease-and-desist letter, whereupon Shek immediately acknowledged her conduct was improper and confirmed that she would cease and desist.

25.     However, on September 2025, less than one (1) year later, Shek formed XSES!

26.     XSES is unlawfully competing with Plaintiff in breach of Shek's agreement with Plaintiff.

27.     Upon information and belief, Shek continues to use Plaintiff's confidential information and trade secrets to unlawfully compete against Plaintiff and deprive Plaintiff of its contractually agreed-upon benefit with its customers.

28.     Egregiously, it has come to Plaintiff's attention that Shek maintained access to Plaintiff's proprietary systems and customer relationship management tools even after her engagement with the Plaintiff ended, such that Shek was able to identify and contact Plaintiff's leads in order to steal them from Plaintiff!

29.     Indeed, this is how Plaintiff first learned that Shek was competing with Plaintiff in breach of her restrictive covenant agreement and in violation of the law.

30.     These unauthorized acts of Defendants in using critical confidential information to cut Plaintiff out of its business is unlawful.

31.     There was no other way to obtain this information and Defendants used it as a "roadmap" and "step by step manual" to establish their operations to improperly independently derail the Plaintiff's business.

32.     Plaintiff's trade secrets and confidential information that Defendants misappropriated through the confidential data of Plaintiff provided Defendants with the ability to duplicate operational, service, and development techniques that Plaintiff has spent years establishing; meanwhile, Defendants gained access to information through subterfuge that they would have no other way of obtaining.

33.    Defendants misappropriated such confidential and trade secret information by engaging in outright theft; no permission was given to Defendants to utilize Plaintiff's customer lists, customer preferences, financial information, and details about Plaintiff's customers for any purpose except for the benefit of Plaintiff.

34.    It is obvious from Defendants' brazen tactics that they are actively engaged in a scheme to plunder and destroy the company Julia Valler spent years building.

35.    Upon information and belief, a significant number of Plaintiff's customers have been solicited directly by Defendants using Plaintiff's trade secrets and confidential information.

36.    Immediate injunctive relief and a permanent injunction is necessary to prevent Defendants from destroying the customer relationships, brand, and goodwill that Plaintiff has spent years building, from profiting on a business which they stole from Plaintiff, and causing further imminent and irreparable financial harm to Plaintiff.

37.    In addition to securing the return of its misappropriated information to it by Defendants and enjoining them from engaging in any further unlawful conduct, it is essential that Plaintiff be permitted to forensically examine the Defendants' email accounts, computers, cellular phones, and any other electronic devices or cloud storage accounts, to determine the exact nature and extent of Defendants' unlawful scheme to steal Plaintiff's customers.

## AS AND FOR ITS FIRST CAUSE OF ACTION
**(Violation of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 – All Defendants)**

38.    Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

39.    Defendants' actions, as set forth herein, constitute misappropriation under the DTSA, 18 U.S.C. § 1836.

40.    Defendants possess trade secrets and confidential information belonging to Plaintiff, including the identity of all of its customers, contact information, and all details related to customers, including inter alia, their preferences and pricing, profit margins, in addition to private and confidential financial information.

41.    Plaintiff made and makes reasonable efforts to maintain the secrecy of this information including limiting its disclosure to employees by safeguarding it at the company's New York City location.

42.    Nonetheless, one employee, Shek, stole it and used it to form her competing entity, XS.

43.    This was in violation of the Agreement, which included a non-compete clause effective for two (2) years following termination.

44.    Defendants had no authority to utilize confidential information and trade secrets of Plaintiff.

45.    The confidential information and trade secrets belonging to Plaintiff that Defendants possess derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

46.    Indeed, Defendants utilized this very information as a road map to open a competing business and to unfairly compete against Plaintiff in dastardly fashion.

47.    Defendants knew that this information contained confidential information and trade secrets belonging to Plaintiff.

48.    Defendants have no right to retain or use any of Plaintiff's trade secrets or other confidential and proprietary information due to their illegal conduct.

49.     Upon information and belief, Defendants are retaining and using Plaintiff's confidential information and trade secrets to compete with Plaintiff.

50.     Plaintiff did not consent to Defendants' use of the information as set forth above.

51.     At all relevant times, Defendants knew that the information obtained by them contained Plaintiff's proprietary trade secrets that they had no right to receive and could not receive absent their improper acts.

52.     Defendants' conduct thus constitutes knowing, willful, and malicious misappropriation; Defendants have used Plaintiff's confidential information and trade secrets to sell, through interstate commerce, services that compete with the services that Plaintiff markets, causing substantial loss of sales to Plaintiff and damage to its relationships with its clients and the potential obliteration of Plaintiff's brand.

53.     Defendants have wrongfully acquired and used Plaintiff's confidential information and trade secrets and continue to do so, without the express or implied consent of Plaintiff, for Defendants' own benefit and the benefit of others.

54.     The public policy in favor of protecting Plaintiff's interest in maintaining its trade secrets outweighs any interest Defendants could have in using Plaintiff's confidential information and trade secrets.

55.     As a direct and proximate result of Defendants' misappropriation of Plaintiff's confidential information and trade secrets, Plaintiff has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage including, without limitation, the loss of its brand recognition and goodwill with its clients, and will continue to suffer said injury, loss, harm or damage unless and until Defendants are restrained from their continued misappropriation of confidential information and trade secrets.

## AS AND FOR ITS SECOND CAUSE OF ACTION
**(Injunctive Relief under the DTSA, 18 U.S.C. § 1836, *et seq.* – All Defendants)**

56.     Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

57.     Plaintiff operates its business in interstate commerce in New York, Florida, California, Nevada, Texas, and Illinois, and the trade secrets misappropriated by Defendants are related to, and intended for use in, interstate commerce.

58.     As set forth above, Defendants improperly acquired Plaintiff's trade secrets, including information regarding Plaintiff's business, operations, services, clients (including annual revenue from particular clients, and client preferences), pricing, sales and marketing strategies, and other confidential business and/or financial information that was secret, valuable in the industry, and had not been disclosed to anyone except those employees with access to confidential data stored at Plaintiff's New York City location, who were obligated to keep this information confidential. The aforementioned information qualifies as "trade secrets" under the DTSA, as defined in 18 U.S.C. § 1839(3).

59.     The misappropriated data concern Plaintiff's operations, services, clients (including annual revenue from particular clients, and client preferences), pricing, sales and marketing strategies, including financial, business, and economic information, plans, methods, techniques, procedures, formulas and processes.

60.     Further, Plaintiff has taken reasonable measures to keep such information secret by, *inter alia*, including restricting access to relevant software applications, functions, and data (each based on employee roles), using two-factor authentication for sensitive applications, utilizing a firewall implemented by an Information Technology ("IT") team, having an IT team available,

and limiting highly sensitive information to a small number of key employees, all of whom are subject to restrictive covenants concerning confidentiality and non-disclosure.

61.     The trade secrets misappropriated by Defendants include those which required substantial resources, time, and investment by Plaintiff to create and/or develop, and thus derive independent economic value from not being generally known to, or readily ascertainably by, those who can obtain economic value from use of this information.

62.     Defendants' misappropriation of Plaintiff's trade secrets has caused Plaintiff to suffer harm, including but not limited to the loss of clients, loss of reputation, damage to their brand, and customer goodwill, and loss of the confidentiality of, and investment in, its trade secrets.

63.     This harm cannot be adequately remedied at law and requires permanent injunctive relief. Plaintiff will suffer irreparable and imminent harm in the absence of a permanent injunction; Defendants' continued misappropriation of Plaintiff's trade secrets and failure to return Plaintiff's documents containing Trade Secrets, including Plaintiff's customer information, will cause Plaintiff further loss of market share.

64.     This imminent injury is neither remote nor speculative, because Plaintiff has already been harmed in precisely this manner by Defendants' misappropriation and use thereof, and will continue to be irreparably harmed in the absence of a permanent injunction.

65.     Defendants will not suffer harm from the rightful return of Plaintiff's proprietary information and trade secrets, and will not be prevented from conducting their ordinary business by lawful means.

66.     Defendants will merely be prevented from continuing to gain an unfair and unlawful advantage at Plaintiff's expense. The ongoing, continuing and future harm to Plaintiff cannot be adequately remedied at law and requires permanent injunctive relief.

67.    The public interest would not be disserved by the issuance of an injunction preventing Defendants from misappropriating Plaintiff's Trade Secrets.

68.    Accordingly, Plaintiff is entitled to an injunction, pursuant to 18 U.S.C. 1836(b)(3)(A), enjoining Defendants from continuing to use Plaintiff's trade secrets, in order to prevent continued actual and threatened misappropriation of Plaintiff's trade secrets, and requiring Defendants to return and/or destroy the trade secrets improperly accessed and retained by Defendants, pursuant to 18 U.S.C. 1836(b)(3)(A)(ii).

## AS AND FOR ITS THIRD CAUSE OF ACTION
### (Misappropriation – All Defendants)

69.    Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

70.    Defendants' actions, as set forth herein, constitutes misappropriation under New York law.

71.    Defendants currently possess information belonging to and used in the operation of Plaintiff's business, which information constitutes confidential, proprietary and trade secret information under New York law.

72.    Such information was developed by Plaintiff through great effort and expense, in terms of manpower, time, and costs, and is extremely valuable to Plaintiff, as it is crucial to the operation of its business, cannot be easily acquired or duplicated by others, and, if made available to others, would enable competition with Plaintiff to its detriment.

73.    Plaintiff makes reasonable efforts to maintain the secrecy of this information including limiting its disclosure to those who are key employees of Plaintiff.

74.    Upon information and belief, Defendants knowingly and improperly obtained and used such trade secrets and confidential information for their own benefit.

75.     The improperly retained information constitute trade secrets and Defendants'
actions pose a real and actualized risk that they will and have misappropriated these secrets by
using the information to their advantage or for their own personal economic gain and with the
willful and malicious intent to injure Plaintiff's business and Plaintiff's brand.

76.     As a result, Plaintiff has suffered direct and consequential damages, and is entitled
to recover compensatory damages, including opportunity costs and punitive damages in an
amount to be proven at trial.

### AS AND FOR ITS FOURTH CAUSE OF ACTION
**(Unfair Competition – All Defendants)**

77.     Plaintiff incorporates by reference each of the foregoing allegations as though
fully set forth herein.

78.     Through Defendants' misappropriation of Plaintiff's confidential trade secrets,
upon information and belief, Defendants have stolen customers from Plaintiff.

79.     As a result of Defendants' use of the trade secrets, they unlawfully and
inappropriately obtained a competitive advantage against Plaintiff, and as such, Defendants have
caused economic damages to Plaintiff along with diminishing its goodwill.

### AS AND FOR ITS FIFTH CAUSE OF ACTION
**(Tortious Interference – All Defendants)**

80.     Plaintiff incorporates by reference each of the foregoing allegations as though
fully set forth herein.

81.     Plaintiff has entered into valid written agreements with its clients, customers, and
employees concerning its business.

82.     Defendants were at all relevant times aware of these agreements between Plaintiff
and its clients, customers, and employees.

83.    Upon information and belief, Defendants  misappropriated and utilized Plaintiff's confidential information and trade secrets in violation of the law.

84.    Defendants knew that it was illegal to misappropriate Plaintiff's trade secrets; Defendants' conduct has caused Plaintiff to lose sales as well as cause injury to Plaintiff's brand and reputation with its customers.

85.    As a consequence of Defendants' acts to steal clients, customers, and employees of Plaintiff, it has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct. Defendants' conduct was intentional, willful, and malicious, thus justifying the award of punitive damages and/or exemplary damages.

## AS AND FOR ITS SIXTH CAUSE OF ACTION
### (Unjust Enrichment – All Defendants)

86.    Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

87.    Plaintiff has invested substantial time, money, and effort into developing and maintaining its confidential information and trade secrets in growing its customer base, promoting its brand, and providing services to its members.

88.    Defendants have used and continue to use Plaintiff's confidential information to compete with Plaintiff and funnel Plaintiff's business opportunities away from Plaintiff to Defendants.

89.    As a result of Defendants' use of Plaintiff's confidential information and trade secrets, Defendants have all been enriched at Plaintiff's expense by, among other things, receiving substantial revenues from sales of pharmaceutical products that compete with Plaintiff's services

without bearing the expense and risk of identifying the services and developing the clients, customers, marketing plans, and materials necessary to achieve the sales.

90.      As a consequence of Defendants' acts to steal customers of Plaintiff, Plaintiff has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

**AS AND FOR ITS SEVENTH CAUSE OF ACTION**
**(Breach of Contract – Defendant Shek)**

91.      Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

92.      The parties entered into an agreement whereby they committed to not compete with each other in effectuating event staffing services.

93.      Among other things, the parties agreed to not compete with each other for two (2) years.

94.      Plaintiff performed under the agreement.

95.      However, during the term of the agreement, Shek breached the agreement by utilizing Plaintiff's confidential information and trade secrets stored at Plaintiff's New York City location in order to compete with Plaintiff.

96.      As a result of the Defendants' combined, concerted, and continued efforts, Plaintiff was, is, and continues to be damaged for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

## AS AND FOR ITS EIGHTH CAUSE OF ACTION
### (Conversion – All Defendants)

97.     Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

98.     Plaintiff has a possessory right and legal ownership to the confidential information and trade secrets referenced herein.

99.     Defendants exercised unauthorized dominion over Plaintiff's confidential information and trade secrets.

100.    Defendants willfully exercised unauthorized dominion over Plaintiff's confidential information and trade secrets to the detriment of Plaintiff.

101.    Defendants' unauthorized dominion over Plaintiff's confidential information and trade secrets was and is to the exclusion of Plaintiff's rights.

102.    Defendants' unauthorized dominion over Plaintiff's confidential information and trade secrets constitutes conversion.

103.    Defendants have thus committed the tort of conversion under New York common law.

## AS AND FOR ITS NINTH CAUSE OF ACTION
### (Civil Conspiracy – All Defendants)

104.    Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

105.    Defendants conspired with each other for an unlawful purpose, to wit: obtaining Plaintiff's confidential information and developing a business to compete with Plaintiff using Plaintiff's confidential information.

106.    Defendants have entered into a civil conspiracy to engage in, *inter alia*, misappropriation, unfair competition, unjust enrichment, and tortious interference with contract.

107.    Defendants each agreed to this common goal.

108.    Defendants acted in concert with the specific object of harming Plaintiff for their own personal gain.

109.    Each Defendant performed an overt act in furtherance of the conspiracy.

110.    The unlawful alleged herein, including acts directed into the State of New York, were committed in furtherance of that conspiracy.

111.    As a result of the Defendants' combined, concerted, and continued efforts, Plaintiff was, is, and continues to be damaged.

112.    As a consequence of Defendants' acts to steal customers of Plaintiff, Plaintiff has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

## AS AND FOR ITS TENTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith & Fair Dealing – All Defendants)

113.    Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

114.    The implied covenant of good faith and fair dealing embraces a pledge that neither party to a contract shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

115.    Put another way, reflects an implied undertaking not to take opportunistic

advantage in a way that could not have been contemplated at the time of entry, and which therefore was not resolved explicitly by the parties.

116.    Defendants' conduct in refusing to honor its agreement, and misappropriation of trade secrets to secure an opportunistic advantage before, during, and after negotiations concerning the agreement breached the implied covenant of good faith and fair dealing implicit in the parties' agreement.

117.    Defendants acted with malice and in bad faith solely to further their own economic interest to the extreme detriment of Plaintiff and its rights.

118.    By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial.

**AS AND FOR ITS ELEVENTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty – Defendant Shek)**

119.    Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

120.    Defendant was employed by Plaintiff in a position of trust and confidence.

121.    As an employee of Plaintiff, Defendant owed Plaintiff a fiduciary duty of loyalty and honesty.

122.    By virtue of these duties, Defendant was prohibited from acting in a disloyal manner, or in any way inconsistent with that fiduciary relationship.

123.    Defendant's aforementioned conduct of selling additional services for cash while she worked for Plaintiff using Plaintiff's supplies and equipment constitutes a breach of the fiduciary duty owed to Plaintiff.

124.    As a consequence of Defendant's foregoing intentional breach of her fiduciary duties to Plaintiff, Plaintiff has been injured, for which it is entitled to recover damages including

– but not limited to – financial loss, loss of good will and reputation, compensatory and special damages, interest, and punitive damages in an amount as the proof at a trial may warrant.

### AS AND FOR ITS TWELFTH CAUSE OF ACTION
**(Breach of the Duty of Loyalty – Defendant Shek)**

125.     Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

126.     Defendant was employed by Plaintiff in a position of trust and confidence.

127.     As an employee of Plaintiff, Defendant owed Plaintiff a duty of loyalty and honesty.

128.     By virtue of these duties, Defendant was prohibited from acting in a disloyal manner or in any way inconsistent with the employment relationship.

129.     Defendant's aforementioned conduct of selling additional services for cash on company time while using Plaintiff's supplies and equipment and otherwise at home constitutes a breach of the duty of loyalty owed to Plaintiff.

130.     As a consequence of Defendant's forgoing intentional breach of her duty of loyalty to Plaintiff, Plaintiff has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest, and punitive damages in an amount as the proof at a trial may warrant.

### AS AND FOR ITS THIRTEENTH CAUSE OF ACTION
**(Violation of Faithless Servant Doctrine – Defendant Shek)**

131.     Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

132.     Defendant was employed by Plaintiff in a position of trust and confidence.

133.     As an employee of Plaintiff, Defendant owed Plaintiff a duty of loyalty, honesty, and fidelity.

134.    By virtue of these duties, Defendant was prohibited from acting in a disloyal manner or in any way inconsistent with that trust relationship.

135.    Pursuant to the faithless servant doctrine, Defendant was obligated to be loyal to Plaintiff and was prohibited from acting in a manner inconsistent with her agency or trust and was bound to exercise the utmost good faith and loyalty in the performance of her duties.

136.    Defendant's aforementioned conduct of selling additional services for cash on company time while using Plaintiff's supplies and equipment and otherwise at home constitutes conduct rising to the level of a cause of action pursuant to the faithless servant doctrine.

137.    Defendant's activity was related to the performance of her duties.

138.    Defendant's disloyalty permeated her services in its most material and substantial part.

139.    As a consequence of Defendant's conduct, which constitutes a cause of action pursuant to the faithless servant doctrine, Plaintiff has been injured, for which it is entitled to recover damages including but not limited to the return of wages, bonuses and other compensation paid to Defendant such that they are disgorged, financial loss, loss of good will and reputation, compensatory and special damages, interest, and punitive damages in an amount as the proof at a trial may warrant.

## DEMAND FOR JURY TRIAL

140.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in its favor as against Defendants as follows:

a.   Compensatory damages for misappropriation of Plaintiff's goodwill, misappropriation and unfair competition, violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, tortious interference with contract, business relations, and prospective economic advantage, unjust enrichment, breach of contract, conversion, civil conspiracy, and breach of implied covenant of good faith and fair dealing, according to proof at trial, including but not limited to, lost profits, disgorgement of all profits and revenues received by Defendants, and – to the extent calculable – damages for reputational damage, lost customers, lost relationships, lost revenue, loss of goodwill, corrective advertising, and all other available damages;

b.   Injunctive relief restraining and enjoining Defendants from further violations of the DTSA, including the use of confidential information or trade secrets of Plaintiff, and unfairly competing with Plaintiff in any manner;

c.   Injunctive relief restraining and enjoining Defendants from having any contact with Plaintiff's current and/or former key employees;

d.   Ordering that Defendants return all of Plaintiff's confidential and proprietary information, including a forensic examination of all of Defendants' computing devices, cellular phones, and cloud storage sites;

e.   Prohibiting the Defendants or their agents from participating in the event staffing services industry, whether directly or indirectly;

f.   Punitive and exemplary damages in an amount to be determined at trial in this case;

g.   Interest (pre-judgment & post-judgment);

h.   Equitable relief in the form of the imposition of an injunction, constructive trust, accounting, and a disgorgement of profits and other benefits received by reason of the unlawful conduct complained of herein;

i.   Enjoining Defendants from operating their business by virtue of their illegal conduct;

j.   Ordering that Defendants pay the costs of suit, including attorneys' fees; and

k.   Such other and further relief as this Court deems just, equitable, and proper.

Dated: Jamaica, New York
      January 2, 2026                Respectfully submitted,

                                      **SAGE LEGAL LLC**
                                      *__ /s/ Emanuel Kataev, Esq.____*
                                      Emanuel Kataev, Esq.
                                      18211 Jamaica Avenue
                                      Jamaica, NY 11423-2327
                                      (718) 412-2421 (office)
                                      (917) 807-7819 (cellular)
                                      (718) 489-4155 (facsimile)
                                      emanuel@sagelegal.nyc

                                      *Attorneys for Plaintiff*
                                      *Julia Valler Inc.*